**AMERICAN MULTI–CINEMA, INC., Plaintiff–Appellant,**

v.

**CITY OF WESTMINSTER and Susann S. Stubbs, as Finance Director for the City of Westminster, Defendant–Appellee.**

No. 94CA0297.

Colorado Court of Appeals, Div. II.

July 13, 1995.

Rehearing Denied Aug. 10, 1995.

Certiorari Denied Feb. 12, 1996.

Holland & Hart, Alan Poe, Denver, for plaintiff-appellant.

Martin R. McCullough, City Atty., Westminster, for defendant-appellee.

Opinion by Judge CRISWELL.

In these proceedings to review an administrative decision by the Finance Director of the City of Westminster, the district court affirmed the Director's determination that plaintiff, American Multi–Cinema, Inc., was liable for the payment of a local use tax to Westminster. That ruling was based on plaintiff's use of motion picture films for display to the public for profit. We agree with the district court that such administrative decision was correct and, therefore, affirm its judgment.

Westminster's use tax ordinance, as in effect during the relevant times here, levies a tax, based upon the cost of acquisition:

[U]pon the privilege of using ... any article of tangible personal property ... purchased, leased or rented ... on which the City sales tax has not been paid.

In addition, the ordinance defines "purchase" to include "a lease, rental, or grant of a license to use ... tangible personal property."

Exempted from such use tax is tangible personal property acquired through a "wholesale sale," which is an acquisition of property for "resale" and not for the use or consumption of the buyer.

Plaintiff operates two motion picture theaters in Westminster. It regularly enters into agreements with various motion picture distributors under which it obtains copies of copyrighted motion picture films and a license to exhibit those motion pictures to the public for a limited period. Upon expiration of that period, the films must be returned to the distributors. As consideration to the distributors, plaintiff pays a fee which is based upon the admission fees received by plaintiff from its patrons. It is undisputed that the distributors do not pay a sales tax upon these transactions to Westminster.

Defendant determined that these transactions were subject to Westminster's use tax and issued notices of assessment based thereon. After exhausting the available administrative remedies, plaintiff sought review in the district court. That court upheld the assessment.

Both in the trial court and before us, plaintiff argues that it is not liable for the payment of the Westminster use tax because (1) plaintiff's agreements with the distributors are not for the lease or rental of "tangible personal property," but rather constitute limited licenses allowing plaintiff to exercise the incorporeal right to exhibit copyrighted material; (2) if these agreements do constitute leases of tangible personal property, nevertheless, because plaintiff exhibits the motion pictures to the public for a fee, the transactions between the distributors and plaintiff are "wholesale" transactions to which the Westminster use tax does not apply; and (3) in any event, because Westminster imposes an excise tax upon the admissions fee plaintiff charges its customers, the imposition of a use tax upon plaintiff would constitute improper double taxation. We disagree with each of these assertions.

## I.

Plaintiff argues that, while the distributors do provide copies of copyrighted material for its use, the valuable right for which it pays a substantial sum is the incorporeal right to exhibit such material. It argues that a blank motion picture film, or even a film containing copyrighted material, is of relatively nominal value, unless it is accompanied by the copyright owner's permission to exhibit the material for a fee. Hence, it concludes that the substantial consideration paid by plaintiff under its contracts with the distributors, which increases as the number of persons to whom plaintiff exhibits the film increases, is for the incorporeal right to exhibit, not for the use of the tangible film itself.

A similar argument has been advanced for nearly sixty years by taxpayers engaged in the same type of business in which plaintiff is engaged. *See, e.g., United Artists Corp. v. Taylor*, 273 N.Y. 334, 7 N.E.2d 254 (1937). Further, with only isolated exceptions, the appellate courts of the various states have uniformly rejected that argument. For a collation of the prior decisions upon the subject, *see Annotation, Applicability of sales or*

*use taxes to motion pictures and video tapes,* 10 A.L.R.4th 1209 (1981).

In rejecting such an assertion, the courts have recognized that, under federal law, a copyright creates an incorporeal property right that exists separately and independently from the tangible property, such as a book, a magazine, or a film, upon which the copyrighted material appears. Nevertheless, these courts have concluded that the exhibition of films containing copyrighted material constitutes the use of "tangible personal property" for two fundamental reasons.

First, the possession of almost any item of personal property is of little value unless such possession is accompanied by the intangible right to *use* that item for a useful purpose. The lease of an automobile by an owner, for example, would be virtually worthless to the lessee unless the owner granted to the lessee the right to use that vehicle. Hence, while a copyright may define and delimit the owner's right to use, or to restrict the use of, the copyrighted material, the owner's grant of permission to the lessee to use that material is not essentially different from the permission granted by the owner of any other item of personal property to make use of that property. *See Florida Ass'n of Broadcasters v. Kirk,* 264 So.2d 437, 438 (Fla.App.1972) ("Every purchase or rental of property is the acquisition of the right to use that property for its intended purposes. Likewise, practically every piece of property subject to rent or sale is a product of someone's original idea and the rental thereof is for the purpose of using it.") *See also Columbia Pictures Industries, Inc. v. Tax Commissioner,* 176 Conn. 604, 410 A.2d 457 (1979).

Second, the purpose of a motion picture exhibitor, such as plaintiff, is to obtain a finished product which it can exhibit to the public. And, there can be no question but that one or more reels of motion picture film, or a cassette of a video film, is an item of tangible personal property. Indeed, it has been held that even electronic signals through which a satellite transmits movies or other syndicated television programs constitute tangible personal property for this purpose. *May Broadcasting Co. v. Boehm,* 241

Neb. 660, 666, 490 N.W.2d 203, 207 (1992) ("The concept of physically storing an intangible thing is beyond comprehension.")

Given this purpose for the transaction, therefore, it is impossible to separate the lease of the tangible object, the film, from the intangible license to use it. Collectively, they constitute a single transaction and should be treated as such for sales and use tax purposes, and a number of courts have so held. *Boswell v. Paramount Television Sales, Inc.,* 291 Ala. 490, 282 So.2d 892 (1973); *American Television Co. v. Hervey,* 253 Ark. 1010, 490 S.W.2d 796 (1973); *Columbia Pictures Industries, Inc. v. Tax Commissioner, supra; United Artists Corp. v. Taylor, supra; Mount Mansfield Television, Inc. v. Vermont Commissioner of Taxes,* 133 Vt. 284, 336 A.2d 193 (1975).

█ Hence, the use by an exhibitor of one or more reels of film containing copyrighted material to exhibit the same to the public for a fee constitutes "use" of an item of "tangible personal property" for use tax purposes.

In reaching this conclusion, we have considered the decision of the Kentucky Court of Appeals in *WDKY–TV Inc. v. Revenue Cabinet,* 838 S.W.2d 431 (Ky.App.1992), which held that a television station's broadcast of copies of syndicated programs did not constitute the use of tangible personal property. In reaching this conclusion, however, that court relied upon previous decisions which considered the nature and use of computer software programs. While such programs contain some characteristics similar to the films at issue here, they also possess significantly different characteristics. And, in any event, we consider the analysis of the Kentucky court to be less persuasive than that of the other courts that have passed upon similar issues. *See, e.g., May Broadcasting v. Boehm, supra.*

## II.

█ We also reject plaintiff's argument that its use of the films, through means of a motion picture projector to project its images upon a screen, constitutes a re-sale of the film, so as to render plaintiff a wholesaler,

rather than a user or consumer, for sales and use tax purposes.

The customers who pay a fee to watch the running of a motion picture are not given possession of the tangible film, nor do they seek to obtain such possession or any other right thereto. The fee they pay is simply to be able to view images from the film as they are projected onto the screen. Hence, the charge made by plaintiff for the privilege of viewing such images does not constitute a re-sale of the film; it is plaintiff, not its custom-ers, who is the ultimate "user" of such tangi-ble personal property. *In re Merrill Theatre Corp. Sales & Use Tax,* 138 Vt. 397, 415 A.2d 1327 (1980).

### III.

Finally, the levy by Westminster of an admissions fee upon customers frequent-ing plaintiff's motion picture theaters does not result in any double taxation.

The use tax is levied upon plaintiff for the privilege of using the film by exhibiting it. The admissions fee is levied upon its custom-ers for the privilege of viewing the screen where the moving images are projected. Hence, not only is each tax levied upon dif-ferent persons, but it is levied upon the exercise of different privileges arising out of separate transactions. There is, therefore, no double taxation. *In re Merrill Theatre Corp. Sales & Use Tax, supra* (taxing movie-goers for viewing film and exhibitor for pro-jecting it does not constitute double taxation because separate taxpayers and separate transactions are the subjects of the two tax-es). *See Boise Bowling Center v. State,* 93 Idaho 367, 461 P.2d 262 (1969) (levying use tax upon proprietor's lease of bowling equip-ment and admissions fee upon bowlers does not constitute double taxation).

Judgment affirmed.

JONES and CASEBOLT, JJ., concur.