The TOWN OF ERIE, a Colorado statutory town; Victor F. Smith, Mayor; Richard Sisk, Lynn Morgan, Judi Haglin, Thomas Van Lone, Dennis Wiley, Debbie Langerak, Trustees for the Town of Erie; Cindy Keith and Macolm Lopez, Former Trustees for the Town of Erie; Lisa M. Marino, Town Clerk; and Herbert Paddock, Chief Building Official, Petitioners,

v.

W. Robert EASON, Respondent.

No. 99SC835.

Supreme Court of Colorado,
En Banc.

Feb. 20, 2001.
Rehearing Denied March 12, 2001.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Mark R. Shapiro, P.C., Mark R. Shapiro, Boulder, CO, Attorneys for Petitioners.

French & Stone, P.C., Joseph C. French, David M. Haynes, Boulder, CO, Attorneys for Respondent.

JUSTICE MARTINEZ delivered the Opinion of the Court.

The town of Erie sought to enjoin a landowner who had not obtained a building permit from using semi-trailers as rental storage units. In granting the injunction, the trial court held that a building permit was required, reasoning that the semi-trailers were structures within the meaning of the Uniform Building Code (UBC), adopted in the Erie Building Code, because the landowner intended to use the semi-trailers as public rental storage units. On appeal, the court of appeals reversed the trial court's decision, concluding that the semi-trailers did not fall within the purview of the UBC because they were not permanently affixed to the land. *Eason v. Town of Erie*, 997 P.2d 1235, 1237 (Colo.App.1999).

We disagree with the court of appeals' interpretation of the pertinent provisions of the UBC. We do not agree that whether the semi-trailers are permanently affixed to the land is determinative of whether the trailers are structures and, therefore, subject to the requirements of the UBC. As the trial court did, we look to the intended use of the semi-trailers to determine whether they are structures within the meaning of the code. Here, the landowner intended to use the semi-trailers as public rental storage units. Accordingly, the landowner must comply with the building code and apply for a building permit before he may use the semi-trailers as public rental storage units. Therefore, we reverse the judgment of the court of appeals and remand the case to that court with directions to address the remaining issues on appeal in a manner consistent with this opinion.

## I.

The facts necessary to resolve the issue before us are either uncontested or were resolved by the trial court. Although we rely entirely on the uncontested and resolved facts to reach our decision, we mention some of the disputed facts to provide an understanding of each party's position.

In September of 1994, Robert Eason contacted John Lyons, the assistant town administrator for the town of Erie, to obtain information concerning his proposal to rent semi-trailers as self-storage units on industrially-zoned property that he intended to purchase. Lyons confirmed that the land Eason proposed to purchase could indeed be used for the placement of storage facilities, and he suggested that Eason take the proposal to Erie's planning and zoning commission (the commission). Eason claims that Lyons gave him an extensive compliance list, which included fire district issues concerning access, but that Lyons did not mention that the UBC might require a building permit. Eason further contends that Lyons assured him that the proposed use was a use-by-right under the zoning code governing property in the area.

Following Lyons's suggestion, Eason presented his plan to the commission during the audience business portion of the commission's November 3, 1994 meeting. Because the Erie zoning code does not allow the commission to take action on any proposal presented as audience business, and since Eason did not actually own any land at the time of his presentation, the commission neither approved nor disapproved his proposal. Instead, the commission informed Eason that the property in question had been zoned in a manner that allowed storage facilities. The commission's only other comments related to the aesthetics of Eason's plan, such as suggesting that he paint the semi-trailers alike and that he pave the lot to make it free of dust.

Although Erie asserts that Eason presented his proposal during the audience business

portion of the meeting, Eason claims that he believed he was going through the proper procedure for having his proposal examined by the commission. Eason alleges that during his presentation he stated that the trailers were not buildings, and that none of the commission members mentioned the applicability of the UBC. Eason further claims that the vice-chairman of the commission stated, "Well, it being a use-by-right ... we're not going to stop you." Relying on these statements, Eason chose to go forward with his proposal.

After the meeting, Eason did not contact the commission again. Instead, when the lot he had proposed to buy was bought by an adjoining landowner, Eason informed Lyons that the project would not proceed for some time. Eason alleges that he asked Lyons for a letter outlining his rights and assuring that he would not lose those rights because of the delay. Eason claims that Lyons refused to write such a letter, stating, "I don't think it's going to matter; it's a use-by-right." Eason further claims that Lyons told him to bring site-plans by when he was ready to do some work, but that Lyons never advised Eason to apply for a building permit.

In February 1995, Eason purchased a lot next to the one that he had discussed in his proposal. In October 1995, Eason met with Herb Paddock, Erie's new building official. Paddock allegedly told Eason that the semi-trailer storage project was inconsistent with the zoning code, the new building code, and floodplain regulations. Later that month, Paddock sent a memo to the fire marshal indicating that Erie had denied Eason's request.

Despite Paddock's statements to him, Eason moved sixteen semi-trailers onto his lot on January 13–14, 1996, and placed them immediately next to one another on the property line. Two days later, on January 16, the Mountain View Fire Protection District (the fire district) issued an immediate order for Eason to comply with the Uniform Fire Code (fire code). Eason began to address some of the fire district's concerns, and the fire dis-

trict, in response, chose to put its requirements on hold until Eason and Erie resolved the dispute over whether Eason's project required a building permit.

Without seeking approval from either Erie or the fire district, Eason placed three more semi-trailers on the property on the weekend of September 21 and 22, 1996. Thereafter, Erie filed a complaint in Weld County District Court on September 26, 1996, seeking to enjoin Eason from placing more trailers on the property. Eason then denied any alleged violations of the zoning code, building code, floodplain ordinance, fire code, and Erie Ordinance 511. Eason also asserted defenses, including bad faith on the part of Erie, laches, estoppel, waiver, abandonment, lawfulness of the trailers, and a claim that Ordinance 511 was unconstitutional. Eason further asserted counterclaims for declaratory and injunctive relief. In response, Erie moved to dismiss Eason's counterclaims.

The trial court treated Erie's motion to dismiss as a motion for summary judgment, and found that: (1) Eason's trailers were "structures" under the UBC requiring building permits; (2) Erie conceded that storage facilities were a use-by-right under the zoning; (3) Eason could utilize the property for storage if he complied with the building code; (4) Eason need not obtain a business license because Erie lacked a business license ordinance; (5) Erie conceded that ordinance 511 did not apply; and (6) Erie had not committed a taking without just compensation. In an amended order, the trial court also ruled that Eason could lawfully store his empty trailers on his lot without a building permit. The trial court based this later ruling on its holding that "semi-trailers become structures only if used as such." The trial court reasoned that without the intent to use the trailers as public self-storage facilities, the trailers would not become structures.

On appeal, the court of appeals reversed the trial court's decision and provided that the parties could litigate the other issues raised below. We granted certiorari to review the court of appeals' determination.[1]

1. The precise statement of the issue on which we granted certiorari was: "Did the court of appeals

err in ruling, contrary to the Uniform Building Code, that a 'structure' intended for public use

## II.

Initially, we note that interpretation of a municipal ordinance involves a question of law. *Cherry Hills Farms, Inc. v. City of Cherry Hills Vill.*, 670 P.2d 779, 782 (Colo. 1983). Therefore, the interpretation of a municipal ordinance is subject to our de novo review. *People v. J.D.*, 989 P.2d 762, 769 (Colo.1999); *People v. Romero*, 953 P.2d 550, 555 (Colo.1998).

Erie's Building Code is embodied in Ordinance 480, which adopts the Uniform Building Code in its entirety. Under the UBC,

> No building may be constructed, erected, moved, added to, or structurally altered without first having obtained the necessary permits.

UBC § 106.1. The code defines a "building" as "any structure used or intended for supporting or sheltering any use or occupancy." UBC § 204. Thus, in effect, the code provides that a permit is required for "any structure used or intended for supporting or sheltering any use or occupancy." Therefore, both the trial court and the court of appeals focused their inquiries on the meaning of the term "structure."

In its decision, the trial court's interpretation of structure was based on the intended use of the semi-trailers. The trial court noted that semi-trailers are normally used to haul goods over the road, and when used in such a manner, semi-trailers are clearly not structures. However, when semi-trailers are parked and used as permanent public storage units, their character changes from transportation devices to storage devices. Based on this analysis, the trial court found that the semi-trailers here fall under the UBC. The trial court noted that, if left empty upon Eason's property, the semi-trailers would not fall under the definition of "structure" in the UBC, because the character of empty semi-trailers that are not intended for public self-storage would not be transformed.

In contrast, the court of appeals concluded that a structure intended for public use must

must be 'permanently affixed' to the land before a local government may require its owner to

be permanently affixed to the land before a local government may require the owner to apply for a building permit. We do not find anything in the code to support the court of appeals' view that a structure must be permanently affixed to the land for a permit to be required.

In reaching its conclusion, the court of appeals relied upon interpretations of courts in other jurisdictions. Specifically, the court of appeals looked to *Cook County v. Thomas Recreational Vehicle*, 68 Ill.App.3d 582, 25 Ill.Dec. 320, 386 N.E.2d 591 (1979); *City of Dublin v. Finkes*, 83 Ohio App.3d 687, 615 N.E.2d 690 (1992); and *Walker v. Ehlinger*, 544 Pa. 298, 676 A.2d 213 (1996).

In *Cook County*, the Illinois Appellate Court relied upon provisions of the Cook County Building Ordinance that specifically defined "building" as "a structure, or part thereof, built for the support, shelter, or enclosure of persons, animals or chattels, or movable property of any kind and which is permanently affixed to the land." *Cook County*, 25 Ill.Dec. 320, 386 N.E.2d at 592 (internal references omitted). Similarly, in *City of Dublin v. Finkes*, the Ohio Court of Appeals was interpreting the Dublin Zoning Code that defined "structure" as "anything constructed or erected, the use of which requires permanent location on the ground, or attachment to something having permanent location on the ground." *City of Dublin*, 615 N.E.2d at 694 (citing Dublin Zoning Ordinance 2702.6). The definition of "structure" in the ordinances involved in these two cases differs from the definition before us under the UBC. These ordinances specifically provide that a structure is permanently affixed or attached to the land, whereas the UBC instead defines a structure as "supporting or sheltering any use or occupancy." Unlike the court of appeals, we do not find these decisions helpful in our interpretation of the UBC.

In *Walker v. Ehlinger*, the Pennsylvania Supreme Court held that concrete barriers, each eight to ten feet long, three feet high,

apply for a building permit?"

one foot thick, and weighing two tons, were not "structures." *Walker*, 676 A.2d at 213–14. Unlike the definitions in *Cook County* and *City of Dublin*, the Pennsylvania Municipalities Planning Code does not define "structures" as affixed permanently to the land. Instead, the code in Pennsylvania defines a "structure" as "any man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land." *Walker*, 676 A.2d at 214–15.

The Pennsylvania Supreme Court did not reach its decision by considering whether the concrete barriers were permanently affixed to the land or whether the weight of the barriers rendered them virtually immovable. Instead, that court noted that the concrete blocks were not built or constructed as a dwelling or commercial establishment, but were placed on the property in question to deter vehicular trespassing. *Id.* at 215. The court then relied upon a dictionary definition of "structure," and the uses of the barriers, together with other factors, in determining that the definition of "structure" had not been met. *Id.* Thus, *Walker* does not support the proposition of the court of appeals that a "structure" is defined as an object that is permanently affixed to the land. Moreover, as in *Cook County* and *City of Dublin*, the definition of "structure" in *Walker* differs greatly from the definition before us. As such, we do not find this authority persuasive.

As explained above, the UBC requires a permit for any structure used or intended for supporting or sheltering any use or occupancy. UBC § 204. This definition requires us to look to the use or intended use of the structure to determine whether a permit is required. However, the difficulty with this definition is that the use or intended use to which we must look is very broad, to wit: intended for supporting or sheltering any use or occupancy.

■ We are concerned, as was the court of appeals, that "any use or occupancy" may be construed so broadly as to possibly encompass many structures the code was not intended to cover. To properly construe a municipal ordinance, we must turn to the rules of construction applying to statutory provisions. *Dominguez v. City & County of Denver*, 147 Colo. 233, 238, 363 P.2d 661, 664 (1961) (constitutionality of ordinances is determined by the same rules of construction as statutes). Our primary task in construing a statute is to give effect to the legislative purpose underlying the enactment. *Griffin v. S.W. Devanney & Co., Inc.*, 775 P.2d 555, 559 (Colo.1989). In arriving at the correct construction of a municipal ordinance, therefore, we look to the legislative declaration or purpose. § 2–4–203, 1 C.R.S. (2000); *see also In re Petition of U.M. v. Dist. Ct. In and For the County of Larimer*, 631 P.2d 165, 167 (Colo.1981). Thus, to confine the broad terms here, we do not look to the law of other jurisdictions involving dissimilar definitions, but to the purpose of the UBC.

The UBC was enacted to "provide minimum standards to safeguard life or limb, health, property and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures." UBC § 101.2. Arguing from this public safety purpose, Erie asserts that semi-trailers that are used for public storage units are included within the meaning of the term "structure" in the UBC.[2]

We agree. We are persuaded by the trial court's reasoning that Eason's intended use of the semi-trailers as public storage units implicates concerns for public safety, and that the UBC applies to regulate the uses involving public safety concerns. *In re Moyer*, 35 Colo. 159, 222, 85 P. 190, 211 (1904) ("It is the duty of the legislative branch of government to make such laws and regulations as will effectually conserve peace and good order and protect the lives and property of the citizens of the state.").

Eason argues that under the public safety reasoning above, the UBC could arguably be extended to virtually any object. Specifically, Eason asserts that if this court adopts the trial court's intended use and public safety reasoning, the result will be a slippery slope,

---

2. Because this case involves semi-trailers used for public self storage, we do not address whether semi-trailers used for private storage fall within the scope of the UBC.

leading to permit requirements for tractor-trailers parked outside of businesses, as well as construction trailers, motorcycles, vending machines, dumpsters, refrigerators, swing sets, and even picnic tables. Eason contends that such a broad interpretation will result in no standard at all, leaving the permit requirements to the arbitrary whim of any building official. The court of appeals agreed with Eason's reasoning, finding that an interpretation that potentially created such broad permitting requirements led to an absurd result. *Eason,* 997 P.2d at 1237. Consequently, the court of appeals concluded that the illogical results stemming from Erie's public safety argument militated against its adoption. *Id.* We do not agree.

 It is true that when construing a statute, courts must not follow statutory construction that leads to an absurd result. *State Bd. of Med. Exam'rs v. Saddoris,* 825 P.2d 39, 44 (Colo.1992). While we first look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning, if the result is absurd, we may interpret the statute by considering laws upon the same or similar subjects. *Shapiro & Meinhold v. Zartman,* 823 P.2d 120 (Colo.1992); *Colo. Civil Rights Comm'n v. North Washington Fire Protection Dist.,* 772 P.2d 70, 78 (Colo.1989). However, our concern is with the absurdity of the resulting interpretation. We do not generally imagine other possible applications of the interpretation in determining whether the result is absurd. Rather, we consider whether the resulting interpretation is inconsistent with the purposes of the legislation. *See, e.g., AviComm, Inc. v. Colo. Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo.1998) ("[T]he intention of the legislature will prevail over a literal interpretation of the statute that leads to an absurd result."); *People v. Taylor,* 732 P.2d 1172, 1178 (Colo.1987) ("We reject such an interpretation as beyond the obvious legislative purpose sought to be achieved by the compulsory joinder statute."); *Hessick v. Moynihan,* 83 Colo. 43, 56, 262 P. 907, 912 (1927) (holding that certain construction of statute would attribute improper motive to legislature, which courts will not do).

We do not believe that applying the UBC to semi-trailers intended to be used as public storage units is an interpretation that is inconsistent with the public safety purposes of the UBC. Moreover, the broad term "any use or occupancy" is limited by the purposes of the UBC to use and occupancy implicating public safety concerns. The presence of the public in and around semi-trailers to move items for storage is a legitimate safety concern that is properly addressed by the UBC.

We also note that other jurisdictions have considered whether the manner in which semi-trailers are used may result in treating them as buildings or structures. In Pennsylvania, courts have held that "a truck trailer may be transformed into a traditional farm building by virtue of its ... use." *Willits Woods Assocs. v. Zoning Bd. of Adjustment,* 138 Pa.Cmwlth. 62, 587 A.2d 827, 829 (1991) (citing *In re Heller,* 101 Pa.Cmwlth. 564, 516 A.2d 859 (1986)). In *Heller,* the Pennsylvania Commonwealth Court found that, while truck trailers did not look like traditional farm buildings, they were being used exactly as such, and therefore fell under the definition of structure in the local zoning ordinance. *Heller,* 516 A.2d at 861–62. While these cases do not concern the UBC and are not alone persuasive, nonetheless, they lend support to the concept that it is both reasonable and feasible to consider the intended use of a truck trailer to determine whether it is a building or structure.

We conclude that semi-trailers intended for use as public self-storage units are structures as defined by the UBC. As such, Eason's semi-trailers are structures requiring building permits under the UBC.

### III.

 In sum, we hold that semi-trailers intended to be used as public self-storage rental units are structures under the Uniform Building Code, and are therefore subject to all appropriate permit requirements. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court so that it may address the remaining

issues in a manner consistent with this opinion.