**CINEMARK USA, INC.,**
**Plaintiff–Appellant,**

v.

**Chuck SEEST, as Financial Officer for the City of Fort Collins, and the City of Fort Collins, a Colorado municipal corporation, Defendants–Appellees.**

**No. 06CA2549.**

Colorado Court of Appeals,
Div. VI.

Feb. 21, 2008.

Certiorari Denied Aug. 4, 2008.

Oreck, Bradley, Crighton, Adams & Chase, Adam W. Chase, Nicole Crighton, Boulder, Colorado, for Plaintiff–Appellant.

Stephen J. Roy, City Attorney, Kraig Ecton, Assistant City Attorney, Fort Collins, Colorado, for Defendants–Appellees.

Opinion by Chief Judge DAVIDSON.

In this use tax assessment case, plaintiff, Cinemark USA, Inc., appeals from the district court judgment determining that its use of motion picture film reels for display to the public for profit was subject to a use tax imposed by defendants, the City of Fort Collins and Chuck Seest, as Financial Officer for the City (collectively, the City). We affirm.

## I. Background and Standard of Review

The parties stipulated to the relevant facts. Cinemark operates a single movie theater in the City. It regularly enters into agreements with film distributors whereby it obtains temporary possession of copies of copyrighted motion picture film reels and a limited license to use and exhibit the films to the public for a certain period of time. In return for such use, Cinemark pays the film distributor a designated percentage or royalty of ticket sales and, if a movie does not bring in any ticket sales, then Cinemark pays only a minimal handling charge. Under these agreements, Cinemark must return the film to the distributor after the exhibition period has ended. Additionally, Cinemark is prohibited from duplicating, sub-licensing, cutting, editing, supplementing, or otherwise altering the licensed material.

The City's use tax ordinance, which was in effect during the relevant times here, levies a tax

on the full purchase price paid for or acquisition costs of *tangible personal property* and taxable services brought into the city for the purposes of using, storing, distributing or consuming such property and services. The use tax is levied upon the privilege of storing, distributing, consuming or using in the city, personally or in connection with the operation of a business, tangible personal property or taxable services and is *paid by either the retailer or the consumer.*

Code of the City of Fort Collins, ch. 25, art. III, div. 1, § 25–74 (1986) (emphasis added).

The City determined that Cinemark's transactions were subject to the tax and issued assessment notices. Cinemark objected to the assessments and, after exhausting its administrative remedies, sought de novo review in the district court.

In the district court, the City filed a motion for judgment on the pleadings, arguing that the decision in *American Multi–Cinema, Inc. v. City of Westminster,* 910 P.2d 64 (Colo.App.1995) was dispositive. In that case, a division of this court held, on similar facts, that the exhibition of motion picture film reels containing copyrighted material to the public for profit constituted the use of an item of tangible personal property for use tax purposes.

In response, Cinemark contended that *American Multi–Cinema* had been effectively overruled by *City of Boulder v. Leanin' Tree, Inc.,* 72 P.3d 361 (Colo.2003). In *Leanin' Tree,* the Colorado Supreme Court held that a right acquired by a greeting card company from independent artists to use their art in manufacturing greeting cards was an intangible right not subject to use tax. Cinemark argued that, under *Leanin' Tree,* the City's use tax assessment was improper.

The district court granted the City's motion for judgment on the pleadings, and upheld its assessment. Cinemark appeals, contending that the district court erred because (1) under *Leanin' Tree,* the leased film reels are not tangible personal property; and (2) it is not a purchasing consumer and, therefore, not a taxpayer under the Fort Collins Code. We reject both contentions.

■ Our standard of review is de novo. *See Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue,* 40 P.3d 1260, 1264 (Colo. 2002)(de novo review for questions of law); *Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver,* 15 P.3d 785, 787 (Colo.App.2000) ("An appellate court may set aside an administrative agency decision if the agency erroneously interpreted the law.").

## II. Tangible Personal Property

Cinemark's primary contention on appeal is that, under the totality of the circumstances, its transactions with film distributors for the use of motion picture film reels are not taxable events because they involve intangible, intellectual property rights rather than tangible personal property. We disagree.

### A. The Case Law

#### 1. *American Multi–Cinema*

In *American Multi–Cinema*, the taxpayer movie theater argued that a motion picture film reel had little value unless it was accompanied by the copyright owner's permission to exhibit the material. Thus, the argument went, it was not the use of the physical film reels, but the "incorporeal right to exhibit" the film that was being purchased. 910 P.2d at 65.

A division of this court disagreed and held that the films and the right to exhibit them constituted tangible personal property subject to use tax. *Id.* at 65–66 (observing that the vast majority of courts nationwide have rejected similar arguments "advanced for nearly sixty years by taxpayers engaged in the same type of business in which plaintiff is engaged"). Noting that possession of almost any item of personal property is worth little unless it is accompanied by the intangible right to use the item, the division reasoned that "the purpose of a motion picture exhibitor ... is to obtain a finished product [the movie reel] which it can exhibit to the public," and that "there can be no question" that a movie reel or video film cassette is an item of tangible personal property. *Id.* at 66.

#### 2. *Leanin' Tree*

In *Leanin' Tree*, the transaction at issue involved artwork produced by independent artists used by a greeting card manufacturer. For the first time in Colorado, the supreme court addressed the application of a use tax when a transaction was for the purchase of inseparably mixed tangible property and intangible rights or services, and the relevant ordinance or statute does not provide specific guidance. *See* 72 P.3d at 362–63.

The court adopted a case-by-case, "totality of the circumstances" test, requiring consideration of various factors to determine whether the "true object, dominant purpose, or essence" of the transaction is, in fact, corporeal tangible property or an intangible right or service. *Id.* at 365. ("Whether couched in terms of the true object, dominant purpose, or essence of the transaction, or of the consequential or incidental nature of the transfer of tangible property, the rationales of most courts attempting to characterize inseparably mixed transactions acknowledge, either explicitly or implicitly, that they are not reducible to a single dispositive factor."); *see also* Steven P. Young & Robert D. Walker, *Current Developments: Colorado*, 14 J. Multistate Tax'n 28, 41–45 (2004); Andrew W. Swain, *The Taxability of Computer Software in Colorado*, 32 Colo. Law. 91, 96 (Dec. 2003).

Discussing factors relied on by other courts, such as the comparative value of the tangible and the intangible property, whether there were constraints on a buyer's ability to use the tangible property, or whether the tangible property represented a finished product, the *Leanin' Tree* court determined that the operative question was whether the transaction at issue was more analogous to the purchase of goods or to the purchase of a service or intangible right.

Finding the greeting card manufacturer's use of the artwork similar to the right to edit and publish literary works—the latter characterized by the court as the "quintessential transaction for the purchase of an intangible right"—the court concluded that "the clear object[ ] around which the entire transaction [was] structured" was the use of an image made by an artist in creating a new tangible object (the greeting card, which itself was subject to sales or use tax). *Leanin' Tree*, 72 P.3d at 366. Thus, it held that the transaction did not constitute the sale or use of tangible personal property and, therefore, was not subject to use tax. *Id.* at 367.

### B. Application of *Leanin' Tree* to Cinemark's Transactions

When a movie is filmed, images are imprinted onto an original negative celluloid

reel from which a master print is created. The master print then is used to make projection prints that are combined with a soundtrack and made available to movie theaters, such as Cinemark. This final projection reel is the physical component of the property. The corporeal film reel also possesses two intangible interests: the limited copyright license to display the movie; and the movie's intellectual and artistic value. Neither party disputes that these hybrid interests are not meaningfully separable.

Consequently, because the plain language of the City's use tax ordinance does not offer guidance in calculating a use tax on such transactions, and neither party suggests any pertinent source of legislative intent, Cinemark is correct that, in accord with *Leanin' Tree*, we must examine the "totality of the circumstances" to determine the true purpose or object of its transactions with its distributors.

Contrary to Cinemark's contention, however, we conclude that the totality of the circumstances shows that the clear purpose of Cinemark's transactions with the film distributors is Cinemark's use of a physical product, the motion picture film reel, and that this purpose renders the transactions taxable events. We reach this conclusion for the following reasons:

### 1. The tangible component of the transaction is a final product.

A sale of goods involves the transfer of a tangible product in its finished form. *See, e.g.*, § 4–2–105(1), C.R.S.2007; *Black's Law Dictionary* 714 (8th ed.2004) (the essence of "goods" is that they are tangible and moveable). Thus, a transaction is akin to a transfer of goods when the purpose of the transaction is the use by the purchaser of the goods in the form in which they are sold. *See Leanin' Tree*, 72 P.3d at 366 (transactions involving products purchased in final form, to be used unaltered in that form, are more likely to be treated as taxable events because they resemble a sale of goods).

Here, Cinemark's contracts require it to use the films precisely in the form in which they are distributed. *Am. Multi–Cinema*, 910 P.2d at 66 (with every purchase of property comes the right to use the property for its intended use); *see Leanin' Tree*, 72 P.3d at 366 (the transactions for artwork grant "a right to use the image created by the artist in creating a *new* tangible object" rather than entitling Leanin' Tree to the "profit from the *finished product* of the artist" (emphasis added) ); *cf. Sneary v. Dir. of Revenue*, 865 S.W.2d 342, 346 (Mo.1993) (referring to motion picture films as finished products; cited illustratively and without criticism in *Leanin' Tree* ); *K & A Litho Process, Inc. v. Dir. of Revenue*, 653 S.W.2d 195, 197 (Mo.1983)(same). Unlike the use of the art in *Leanin' Tree*, where the taxpayer manufacturer changed the size of the artwork to that of a greeting card, added borders, verse, or both, changed the contrast of the image, added or deleted parts of the original image, and cropped the image, Cinemark's licensing agreement prohibits editing or manipulating the film. The "conversion" to a "useable medium" that may occur when a film's images are projected onto a movie screen is merely the right to use the product as it was intended, that is, to exhibit the film by projecting it onto a movie screen.

The fact that Cinemark must return the films after it uses them is immaterial. Cinemark is correct that the *Leanin' Tree* court considered that the original artwork had to be returned in determining that the essence of the transaction was intangible property. But when the court's analysis is viewed in its entirety, it is apparent that the return of the artwork was important only because it showed that the artwork was not being used as a final product. *Leanin' Tree*, 72 P.3d at 364 ("Although Leanin' Tree used in its manufacturing process the tangible medium upon which the artists' representations appeared, the transactions never permitted Leanin' Tree to keep, sell, display, or otherwise benefit from the artwork as a *finished product*." (emphasis added) ).

### 2. The transaction is structured so that payment is for the use of the finished, tangible product.

In *Leanin' Tree*, the transaction between the greeting card manufacturer and the con-

tributing artist was structured so the artist would be paid a royalty based on greeting cards sales that included the artists' contributions.

Here, the payment structure involved royalties, but more resembles the method of payment for the use or exhibition of a finished piece of art, which the court in *Leanin' Tree* acknowledged was a taxable event. *Id.* at 366 (the purchase of artwork "is normally considered to be the sale of a tangible object"). Specifically, the royalties paid by Cinemark were based on ticket sales made by the exhibition of a particular film made at the theater during the time it showed the film. The payment was not based on the intangible component of the film, i.e., the value of the copyright or the movie and the artistic expression and ideas it may have contained. *Cf. Saenger Realty Corp. v. Grosjean*, 194 La. 470, 193 So. 710, 712 (1940) ("[T]he right to exhibit could be of no greater value than the use of the film because the price is governed by the number of persons that are expected to patronize the exhibit."); *Columbia Pictures Indus., Inc. v. Tax Comm'r*, 176 Conn. 604, 410 A.2d 457, 461 (1979) ("Based on the stipulated facts, it is clear that the plaintiff exhibitor's object in this case was to obtain possession of the saleable end product, the film. This is especially true in this instance where the rental fee or 'license' cost is dependent on how many persons were estimated to view the film.").

### 3. Without the film reels, the copyright and license to exhibit have little value.

Although copyrights constitute intangible property, *see, e.g., Columbia Pictures Indus., Inc.*, 410 A.2d at 459, Cinemark is not purchasing the copyright detached from the film, but the tangible film reel and the right of use that comes with it. Without the transfer of the actual film, the license to exhibit it would be valueless. *See United Artists Corp. v. Taylor*, 273 N.Y. 334, 7 N.E.2d 254, 256 (1937) ("The license to exhibit without the transfer of possession would be valueless. Together they are one transaction...."); *Am. Television Co. v. Hervey*, 253 Ark. 1010,

490 S.W.2d 796, 799 (1973)("[T]he right to use property cannot be separated from the property itself and the 'right' spoken of by appellant would have no value except for the use of the tape or film—the two cannot be separated."); *see also Am. Multi–Cinema*, 910 P.2d at 66 ("[T]he possession of almost any item of personal property is of little value unless such possession is accompanied by the intangible right to *use* that item for a useful purpose."); *Fla. Ass'n of Broadcasters v. Kirk*, 264 So.2d 437, 438 (Fla.Dist.Ct.App. 1972) ("Every purchase or rental of property is the acquisition of the right to use that property for its intended purposes."). Thus, the worth of the copyright and any payment for it is dependent upon its being transmitted with the corporeal film reel.

### 4. The transaction is not a purchase of artistic expression.

Similarly, although motion picture film reels embody artistic expression, which is an intangible interest, most products involve some idea, creativity, and skill. *Cf. Crescent Amusement Co. v. Carson*, 187 Tenn. 112, 213 S.W.2d 27, 29 (1948)("There is scarcely to be found any article susceptible to sale or rent that is not the result of an idea, genius, skill and labor applied to a physical substance."); *Fla. Ass'n of Broadcasters*, 264 So.2d at 438 ("[P]ractically every piece of property subject to rent or sale is a product of someone's original idea and the rental thereof is for the purpose of using it.").

Thus, it was important that in the transactions for the artwork in *Leanin' Tree*, like the purchase of literary manuscripts, the property not only contained artistic ideas and expressions, but also provided the purchaser with the option to use these ideas in a different form than conveyed. Here, however, Cinemark is not buying an option to use an idea of the film distributors; the ideas and the artistic expression for the movie has already been used, edited, and published by the time it reaches Cinemark's theater in the form of a film reel. The film which Cinemark obtains is, as discussed above, simply a physical object embodying the idea in its final form.

Accordingly, we conclude that the totality of the circumstances show that the essence of Cinemark's transactions is its use of motion picture film reels, tangible final products, for exhibition in its movie theater. Consequently, the district court correctly determined that these transactions were subject to use tax under the City Code.

### III. "Paid by [the] Consumer"

■ The Code of the City of Fort Collins requires that an assessed use tax be paid, as relevant here, by a consumer. Under the Code, a "consumer" is "any individual person in the city who uses, stores, distributes or otherwise consumes in the city tangible personal property or taxable services purchased from sources inside or outside the city." Code of the City of Fort Collins, ch. 25, art. III, div. 1, § 25–71.

Cinemark contends that, even if the films constitute tangible personal property, it is not a "consumer" of the film reels. Instead, Cinemark asserts that it merely sells movie tickets to the true consumers of the film reels, the audiences who watch the projected display of the films.

However, the division in *American Multi-Cinema* rejected a similar argument. There, a movie theater contended that its use of film to project images upon the screen constituted a resale of the film, thus rendering the movie theater a wholesaler, rather than a consumer for tax purposes. 910 P.2d at 66–67. The division stated:

> The customers who pay a fee to watch the running of a motion picture are not given possession of the tangible film, nor do they seek to obtain such possession or any other right thereto. The fee they pay is simply to be able to view images from the film as they are projected onto the screen.... [I]t is plaintiff [movie theater], not the customers, who is the ultimate "user" of such tangible personal property.

*Id.* at 67.

We agree with this reasoning. Unlike in *Leanin' Tree*, where the ultimate consumers were the purchasers of the greeting cards that contained the artwork as altered by Leanin' Tree, here, Cinemark purchases the right to show copyrighted film reels and uses them as finished products when it exhibits the films to the public. Movie viewers are no more consumers of film reels than they are of seats, screens, or projectors used in movie theaters. *See In re Merrill Theatre Corp. Sales & Use Tax,* 138 Vt. 397, 415 A.2d 1327, 1329 (1980) (pointing out that under the same argument by a movie theater there, every piece of tangible personal property in the theater would be "used" or "consumed" by the audience and would, therefore, effectively exempt the theater from paying taxes on numerous items kept and used in its theater); *Int'l Paper Co. v. Cohen,* 126 P.3d 222, 226 (Colo.App.2005) (court should not follow an interpretation of a statute or ordinance that would lead to an illogical or absurd result).

Thus, because it acquires and displays a final product, we conclude Cinemark is the end user or consumer of the film reels.

### IV. Purchase or Sale

■ The Code also states that a use tax is to be levied on the "full purchase price for or acquisition costs of" tangible personal property. Cinemark points out that it is not the title holder or owner of the films and argues that, because the film reels were "merely loaned" to it, there was no taxable event. We disagree.

The Code defines a "purchase" or "sale" as "the acquisition for any consideration by any person of tangible personal property or taxable services that are purchased, *leased, rented, sold, used, stored, distributed or consumed,*" excluding bona fide gifts. Code of the City of Fort Collins, ch. 25, art. III, div. 1, § 25–71 (emphasis added). In the district court, Cinemark stipulated that its agreements with the movie distributors included payment for Cinemark's *use* of the film reels, even if for a limited time. Therefore, we conclude the agreements between Cinemark and the film distributors constituted "purchases" or "sales." *See Steamboat Springs Rental & Leasing, Inc.,* 15 P.3d at 787 (when interpreting an ordinance, we give effect to the commonly accepted meaning of the words if the language is plain and unambiguous).

The judgment is affirmed.

NEY * and RULAND *, JJ., concur.