ROMANTIX, INC., d/b/a Romantix ABV Denver, formerly known as Goalie Entertainment, Inc., d/b/a Romantix ABV Denver, Plaintiff–Appellee,

v.

CITY OF COMMERCE CITY, Defendant–Appellant.

No. 09CA1548.

Colorado Court of Appeals, Div. II.

June 24, 2010.

Polsinelli Shughart, PC, Bennett L. Cohen, Denver, Colorado, for Plaintiff–Appellee.

Murray Dahl Kuechenmeister & Renaud LLP, M. Patrick Wilson, Christopher M. Price, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

In this appeal, we consider the application of a city code provision that imposes a tax on the granting of a license to use tangible personal property. The City of Commerce City (City) appeals the district court's summary judgment for Romantix, Inc. (Romantix). The district court determined that Romantix was entitled to a refund for payments it made under the City's Sales and Use Tax Code (code). We reverse and remand to the district court with directions to grant the City's cross-motion for summary judgment.

## I. Background

The parties stipulated to the following facts. Romantix operates an adult video arcade in the City. Customers who visit Romantix are given the opportunity to view various films. They can purchase prepaid cards that enable them to activate either a "film preview" or an "arcade" feature in a private room on the premises, using equipment furnished by Romantix.

If the "film preview" option is selected, the customer chooses a film to watch inside the private room. The customer inserts the prepaid card into a machine to activate the film. The customer can fast-forward the film, adjust the sound, and start and stop the view-ing (although the film continues to run). The charge for the film preview option varies based on the selection of one of two available sizes of rooms.

If the "arcade" feature is chosen, the customer inserts the card into a machine that allows viewing of any of approximately fifty film channels. Charges for this option are $5 for the first twenty minutes and 25¢ for each additional minute, and are deducted from the prepaid card. The customer can choose which channel to watch at any given time, can adjust the sound, and can start and stop the viewing (although the film continues to run).

Though the parties' stipulation does not specify the precise mechanism the customer uses to start or stop the films or make the other available adjustments to the viewing experience, it is clear the adjustments are made using equipment provided by Romantix.

Romantix collected City sales tax from its customers based on the price the customer paid for prepaid cards for the tax years 2005, 2006, and 2007. It later sought a refund of the sales tax paid, and the City denied the request. After a formal hearing, the City's hearing officer determined that no refund was owed.

## II. Disposition in District Court

Romantix filed an appeal of the hearing officer's ruling to the district court under section 29–2–106.1(8)(a), C.R.S.2009. Under section 39–21–105(2)(b), C.R.S.2009, the district court had authority to review de novo all questions of law and fact. It granted summary judgment to Romantix and denied the City's cross-motion for summary judgment.

## III. Standard of Review

"We review the district court's grant of summary judgment and its interpretation of the applicable Code provisions de novo." *Waste Management of Colorado, Inc. v. City of Commerce City*, —— P.3d ——, —— (Colo. App.2010); *see also Town of Erie v. Eason*, 18 P.3d 1271, 1274 (Colo.2001). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c).

We construe the City's tax code using general rules of statutory construction. *Asphalt Specialties Co. v. City of Commerce City*, 218 P.3d 741, 745 (Colo.App.2009). "[I]n interpreting statutes and ordinances, our task is to give effect to legislative intent. In doing so, we look first to the language employed. If the meaning of the enactment is clear and unambiguous, we will apply it as written, unless doing so would lead to an absurd result." *Id.*

■ "[T]ax statutes [and codes] 'will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy.... All doubts will be construed against the government and in favor of the taxpayer.'" *City of Boulder v. Leanin' Tree, Inc.*, 72 P.3d 361, 367 (Colo. 2003) (quoting *Transponder Corp. v. Property Tax Administrator*, 681 P.2d 499, 504 (Colo.1984)).

### IV. Tangible Personal Property

■ The City maintains that the transactions in issue are taxable under code sections 20–4–1, 20–4–5, and 20–4–7, as well as regulation 20–4–9. Because we agree that the transactions constitute the grant of a license to use tangible personal property, and are therefore taxable under section 20–4–1 of the code, we need not address the City's remaining contentions.

We are called upon here to construe both tax code provisions and regulations. It is uncontested that, like the code provisions, the regulations were expressly adopted and approved by the City's City Council and are legally binding.

The code requires the payment of a tax based on the purchase price of tangible personal property. During the relevant period, subject to exemptions not applicable here, section 20–4–1 imposed a tax "on the purchase price paid or charged upon the sale, purchase, lease, rental or *grant of license to use, ... or consumption of tangible personal property* purchased at retail."

Tangible personal property is defined in the code as "corporeal personal property." § 20–3–60. The accompanying regulation states that tangible personal property

> means all goods, merchandise, products, commodities or corporeal things and substances, solid, liquid or gaseous, which are dealt in and capable of being possessed, measured, weighted [sic], contained, transported or exchanged, and the services or labor ordinary or necessary or actually utilized to sell, rent, lease or convey that property to the customer in a usable form or manner and which are specified as taxable herein.

Reg. 20–3–60.

Here, the film viewing equipment comes within the definition of "goods, merchandise, products ... and corporeal things capable of being possessed." Thus, we conclude that the film viewing equipment is tangible personal property under the code.

> "Use" is defined in code section 20–3–69 as the exercise, for any length of time by any person within the City of any right, power or dominion over tangible personal property when rented, leased or purchased at retail from sources either within or without the City from any person or vendor ... whether such tangible personal property is owned or not owned by the taxpayer.

Regulation 20–3–69 further explains this code section:

> The use to which property is put, in order to bring about imposition of the tax, is not necessarily an ultimate usage, but may be only such use as is made by the owner or purchaser in exercising control. Use shall be deemed sufficient for the imposition of the tax when the article purchased is actually used or made available for use after delivery is completed. This shall include ... acts by which ... control over the property is assumed by the purchaser.

The City's hearing officer construed the Romantix transactions here as taxable under section 20–4–1, and we agree. Customers not only use the video viewing equipment to view the films, but also effectively acquire a

license to exercise a degree of control over the equipment to customize their viewing experience, through starting or stopping their viewing, fast-forwarding to the portion of film they desire to view, changing the audio volume, and, in the case of arcade viewing, changing the films that are viewed. Thus, the transactions are taxable as the grant of a license to use tangible personal property under section 20–4–1.

This case bears some similarity to *Cinemark USA, Inc. v. Seest*, 190 P.3d 793, 797–99 (Colo.App.2008), and *American Multi–Cinema, Inc. v. City of Westminster*, 910 P.2d 64, 67 (Colo.App.1995). The divisions in those cases held that the use by motion picture exhibitors of reels of film supplied by distributors constituted the use of tangible personal property and was therefore taxable under city use tax codes. Similarly, the customers here pay, at least in part, for the use of equipment supplied by Romantix.

Romantix nevertheless cites *Cinemark* and *American Multi–Cinema* in support of its contention that the transaction is not taxable because customers simply pay to view a film, and not to purchase, rent, lease, or license the use of tangible personal property. *See Cinemark*, 190 P.3d at 799 ("Movie viewers are no more consumers of film reels than they are of seats, screens, or projectors used in movie theaters."); *American Multi–Cinema*, 910 P.2d at 67 ("The customers who pay a fee to watch the running of a motion picture are not given possession of the tangible film, nor do they seek to obtain such possession or any other right thereto. The fee they pay is simply to be able to view images from the film as they are projected onto the screen.").

The portions of *Cinemark* and *American Multi–Cinema* cited by Romantix are inapposite here. They discussed the customers of general admission movie theaters, who enjoyed a completely passive experience. Each customer simply paid to occupy a seat in a theater and watch a film being shown from start to finish on a screen, while the theater operator controlled the film-viewing equipment.

In contrast, the customers of Romantix have sufficient control over the viewing equipment to manipulate and individualize their film viewing experience. They also control the length of their viewing experience through the use of monetary credits on a prepaid card. Such minute-by-minute payment is analogous to an hourly equipment rental, and is distinct from a single-use movie ticket that gives the viewer admission to view a film that begins and ends according to a schedule set solely by the theater.

Because the taxable event is the customer's license to use film viewing equipment, whether the films themselves constitute tangible personal property is immaterial. *See American Multi–Cinema*, 910 P.2d at 66 ("there can be no question but that [a reel] of motion picture film, or a cassette of a video film, is [taxable as] an item of tangible personal property" even though its possessor also obtains the intangible right to view and exhibit the film); *Cinemark*, 190 P.3d at 797 (while concluding that use of film reels was taxable as tangible personal property, court noted that "the corporeal film reel also possesses two intangible interests: the limited copyright license to display the movie; and the movie's intellectual and artistic value.... [T]hese hybrid interests are not meaningfully separable.").

Because the parties have not contended that customers acquired an inseparable mix of tangible and intangible property interests, we do not discuss *Leanin' Tree*'s treatment of those issues.

The judgment is reversed and the case is remanded to the district court with directions to grant the City's cross-motion for summary judgment.

Judge CASEBOLT and Judge FURMAN concur.