2012 COA 153

**BALL AEROSPACE & TECHNOLOGIES CORPORATION, Plaintiff–Appellee,**

v.

**CITY OF BOULDER, Colorado, Defendant–Appellant.**

**No. 11CA2129.**

Colorado Court of Appeals, Div. V.

Sept. 13, 2012.

Silverstein & Pomerantz LLP, Neil I. Pomerantz, Mark E. Medina, Bryan T. Shannon, Denver, Colorado, for Plaintiff–Appellee.

Thomas A. Carr, City Attorney, Kathleen E. Haddock, Senior Assistant City Attorney, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

¶ 1 In this use tax assessment dispute, defendant, City of Boulder (City), appeals the trial court's summary judgment for plaintiff, Ball Aerospace & Technologies Corporation (Company), reversing a hearing officer's determination that Company owed use tax on its acquisition of downloaded computer software and access to online data services. We conclude that the trial court erred in determining that the transactions at issue were not taxable. Accordingly, we reverse and remand to the trial court with directions to grant City's cross-motion for summary judgment and enter judgment in its favor.

### I. Background

¶ 2 Two types of software are at issue in this case. The first type is software that Company downloaded over the Internet (downloaded software). These transactions involved two acquisitions of new software, as well as periodic charges for maintenance and support for software that Company had previously acquired.

¶ 3 The second type is online databases of (1) technical journal articles, conference materials, and papers; (2) federal government contract opportunities and market analysis; and (3) medical hazard and risk reference information to which Company purchased access (online data services). Company also purchased access to an online calendar hosting service, which it used to schedule and manage events and training initiatives.

¶ 4 City conducted an audit of Company for the tax period from February 1, 2006 through January 31, 2009 and, as relevant here, assessed use tax on both the downloaded software and the online data services. Company paid the amount owing under the assessment, but protested City's application of its use tax to the downloaded software and online data services.

¶ 5 City held an informal hearing on Company's protest pursuant to the version of section 29–2–106.1(2)(c), C.R.S.2011, then in effect. *See* Ch. 244, sec. 3, § 29–2–106.1(2)(c), 1985 Colo. Sess. Laws 1032; City Code § 3–2–25. The hearing officer upheld the assessment as to the downloaded software and online data services.

¶ 6 Company appealed the hearing officer's ruling to the trial court under the prior version of section 29–2–106.1(8)(a). *See* Ch. 244, sec. 3, § 29–2–106.1(8)(a), 1985 Colo. Sess. Laws 1034; § 39–21–105, C.R.S.2011. City and Company filed cross-motions for summary judgment, and the trial court conducted a de novo review of all questions of law and fact. *See* § 39–21–105(2)(b). The court granted summary judgment to Company as to both the downloaded software and the online data services, and it denied City's cross-motion for summary judgment.

## II. Analysis

¶ 7 City argues that the trial court misconstrued the City Code and erred in concluding that neither the downloaded software nor the online data services are subject to City's use tax. We agree.

### A. Standard of Review

¶ 8 We review both the trial court's grant of summary judgment and its interpretation of the City Code de novo. *See Romantix, Inc. v. City of Commerce City,* 240 P.3d 565, 566 (Colo.App.2010). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Amos v. Aspen Alps 123, LLC,* 2012 CO 46, ¶ 13, 280 P.3d 1256, 1259. In considering cross-motions for summary judgment, the trial court must evaluate each motion separately, review the record, and determine whether there is a genuine dispute as to any fact material to that motion. *Avi-Comm, Inc. v. Colo. Pub. Utils. Comm'n,* 955 P.2d 1023, 1029 (Colo.1998).

¶ 9 In general, a denial of summary judgment is not appealable because it is not a final order. *See Mahaney v. City of Englewood,* 226 P.3d 1214, 1217 (Colo.App.2009). However, an order denying summary judgment is appealable where, as here, the trial court grants one motion for summary judgment and denies the other, effectively ending the litigation. *See id.*

¶ 10 We construe a municipal code using the same principles that we use in interpreting statutes. *Waste Mgmt. of Colo., Inc. v. City of Commerce City,* 250 P.3d 722, 725 (Colo.App.2010). In interpreting municipal code provisions, we endeavor to give effect to the intent of the drafters. *Id.* We look first to the plain language of the code. *Id.; Romantix,* 240 P.3d at 567. We read code provisions so as to give effect to every word, and we consider the language used in the context of the code as a whole. *Waste Mgmt.,* 250 P.3d at 725. If the code provision is clear and unambiguous, we must apply it as written unless doing so would lead to an absurd result. *Romantix,* 240 P.3d at 567. Only if the code provision is ambiguous will we resort to other rules of statutory construction. *See Klinger v. Adams Cnty. Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo. 2006).

¶ 11 Tax provisions "will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy." *City of Boulder v. Leanin' Tree, Inc.,* 72 P.3d 361, 367 (Colo. 2003) (quoting *Transponder Corp. v. Prop. Tax Adm'r,* 681 P.2d 499, 504 (Colo.1984)). All doubts as to the interpretation of a tax provision will be construed against the government and in favor of the taxpayer. *Id.*

¶ 12 Here, both parties take the position that there are no disputed issues of material fact relevant to our resolution of this case [1] and that the tax provision at issue is unambiguous. We agree.

### B. City's Use Tax

¶ 13 In general, "[a] use tax is supplementary to, rather than separate from, a

---

1. At oral argument, City contended that the parties dispute whether the downloaded software was "contained on ... machine-readable ... form" during the downloading process. Because we do not need to address this issue to resolve the case, we do not consider it.

sales tax." *Conoco Inc. v. Tinklenberg,* 121 P.3d 893, 896 (Colo.App.2005). Thus, for example, while sales tax is levied on a purchase, use tax is levied on the privilege of storing, using, or consuming tangible personal property purchased at retail. *See id.* We perceive no reason why the same principles should not apply to the use of taxable services purchased at retail.

¶ 14 City's municipal use tax is set forth in section 3–2–2 of its Revised Code (City Code or code), which provides:

> [T]here is hereby levied and there shall be collected and paid a sales or use tax on the full purchase price paid or charged for tangible personal property and taxable services purchased or sold at retail by every person exercising a taxable privilege in the city by the sale or use of such property and services.... The use tax is levied upon the privilege of using in the city, personally or as part of rendering a service, tangible personal property or taxable services upon which a municipal sales or use tax has not been paid and is paid by either the vendor doing business in the city or the consumer.

The code defines "use" as "the exercise, for any length of time, by any person within the city of any right, power, dominion, or control over tangible personal property or taxable services when leased or purchased at retail from any person inside or outside the city." City Code § 3–1–1. "Purchase" or "sale" is defined as "the acquisition for any consideration by any person of tangible personal property or taxable services that are purchased, leased, sold, used, stored, distributed, or consumed," and includes "[a] lease, lease-purchase agreement, rental or grant of a license ... to use tangible personal property or taxable services." *Id.*

¶ 15 The code defines "computer software" as "computer instructions as described in the definition of 'taxable services'" and states that computer software is subject to taxation under the sales and use tax chapter of the City Code. *Id.* Thus, the "taxable services" section extends the sales and use tax to

> (f) Computer software contained on cards, tapes, discs, coding sheets, or other machine-readable or human-readable form,

including software that has been modified, so long as the price of the modifications does not exceed twenty-five percent of the price of the unmodified software and excluding software created specifically for the user.

*Id.*

### C. Disposition in the Trial Court

¶ 16 In granting Company's motion for summary judgment, the trial court first addressed the downloaded software. The court reasoned that, because the downloaded software was not contained on a card, tape, disc, or coding sheet, it was taxable only if it was "contained on ... other machine-readable ... form." The court found that downloaded software is (1) not machine-readable because the downloading process converts the software from machine-readable binary code to "disaggregated and dispersed electromagnetic signals" that are not machine-readable and (2) not contained on a form because, unlike a physical storage medium, an electronic download does not "contain" anything or have "form." Thus, by focusing on the downloading process rather than the use of the software, the court concluded that the downloaded software did not fall within the plain language of the computer software definition and was not subject to the City's sales and use tax.

¶ 17 Second, addressing the online data services, the court found that the information transmitted from the online data services was not contained on any physical storage medium. Thus, because the online data services were not "contained on ... other machine-readable or human readable form," the court concluded that they were not subject to City's use tax.

### D. Downloaded Software

¶ 18 City argues that the trial court erred in concluding that the City Code taxes only software conveyed by physical storage media rather than taxing all computer software "contained on ... machine-readable ... form" regardless of the means of conveyance. We agree.

¶ 19 The City Code states that "[t]he use tax is levied upon the privilege of using in the city, personally or as part of rendering a service, ... taxable services." City Code § 3–2–2(a). The code defines "use" as "the exercise, for any length of time, by any person within the City of any right, power, dominion, or control over ... taxable services when leased or purchased at retail from any person inside or outside the City." City Code § 3–1–1. It defines computer software as that "contained on cards, tapes, discs, coding sheets, or other machine-readable or human-readable form." *Id.* Thus, by its plain language the code levies the use tax on computer software (1) leased or purchased at retail, (2) contained on an enumerated form or other machine-readable or human-readable form, and (3) over which the buyer has any right, power, dominion, or control.

¶ 20 Company does not dispute that it purchased or leased the software at retail or that it had right, power, dominion, or control over the software after it was downloaded. Further, the parties agree that the software at issue here was not human-readable and that it was not contained on cards, tapes, discs, or coding sheets. Thus, the software is taxable only if it is "contained on ... other machine-readable ... form." Company contends that, during the download, downloaded software is not "contained on ... other machine-readable ... form" and thus does not fall within the City Code's definition of computer software.

¶ 21 According to the affidavit prepared by Company's computer engineering expert, software must be in binary format—a set of 1's and 0's—to be machine readable. Software stored on a vendor's server that is available for download is in binary format. During the download from the vendor's server, the binary values are converted into waves of electromagnetic energy, which are transmitted to the receiving computer, decoded, and used to reconstruct the proper sequence of binary values comprising the software on the receiving computer. Thus, according to Company, because the electronic signals comprising the download have no coherent boundary, are fleeting, and are not in binary format during transmission, the software is not "contained on" any "form" that is "machine-readable" during the download.

¶ 22 We conclude that Company's emphasis on the mode of conveyance is misplaced. Although the definition of "computer software" lists examples of taxable software, it contains no language requiring that the software be conveyed by any particular means before the tax may be levied. Indeed, none of the relevant provisions of the City Code requires that the software be conveyed before the use of software is taxable. Rather, the use tax is levied when the purchaser exercises any right, power, dominion, or control over software "contained on ... machine-readable ... form." Thus, we conclude that, regardless of the means of conveyance, if any, the City Code unambiguously taxes the use of software so long as the software is "contained on ... machine readable ... form" at the time that the purchaser exercises any right, power, dominion, or control over the software.

¶ 23 According to Company's expert, downloaded software is in machine-readable form after the download is complete. City's expert, who also testified by affidavit, stated that, after software is downloaded, it is stored on the buyer's own hard drive or other storage medium using the physical memory space. Company does not dispute this fact. Thus, after Company downloads software, it is contained on Company's computer in machine-readable form, at which point Company may exercise right, power, dominion, or control over the software and City may properly tax that taxable privilege.

¶ 24 We conclude that the trial court erred in relying on the means of conveyance in concluding that downloaded software is not "contained on ... machine-readable ... form" and thus does not fall within the definition of computer software in the City Code. Because we have concluded that the City Code unambiguously taxes computer software that is "contained on ... machine-readable ... form" regardless of the method of delivery, we do not consider Company's arguments regarding other tools of statutory construction. *See Klinger,* 130 P.3d at 1031.

### E.  Online Data Services

 ¶ 25 City argues that the trial court erred in concluding that the online data services were not taxable because the information transmitted from online databases was not conveyed by means of physical storage media.  We agree.

¶ 26 As described above, by its plain language the City Code levies the use tax on computer software (1) leased or purchased at retail, (2) contained on an enumerated form or other machine-readable or human-readable form, and (3) over which the buyer has any right, power, dominion, or control.  Included in its definition of "purchase" or "sale" are transactions involving "[a] lease, lease-purchase agreement, rental or grant of a license ... to use ... taxable services."  City Code § 3–1–1.  Thus, the code does not require the transfer of ownership before the use of software is taxable.

¶ 27 According to the affidavit prepared by City's computer engineering expert, "[w]hen accessing a commercial database, the customer is ... granted a right to use the database host's computer system and software.  For example, when the customer searches for certain material on the host's webpage, he or she is using the host's server and its search engine program."  Company does not dispute this fact.  Accordingly, we conclude that, by paying to access the online data services, Company purchased the right to use, from a remote location, the computer software contained on the service providers' servers.

¶ 28 We therefore conclude that the trial court erred in holding that remote access to the online service providers' software is not a taxable use of computer software under the City Code.

### III.  Conclusion

¶ 29 The judgment is reversed and the case is remanded to the trial court with directions to grant City's cross-motion for summary judgment and enter judgment accordingly.

Judge LOEB and Judge NEY,* concur.