## KELLY v. DENT THEATERS, Inc.
### (No. 841.)

Court of Civil Appeals of Texas. Waco.
Oct. 17, 1929.

Rehearing Denied Nov. 14, 1929.

Clint Allen and S. J. T. Smith, both of Waco, for appellant.

Pat S. Russell, of Dallas, and Spell, Naman & Penland, of Waco, for appellee.

GALLAGHER, C. J. Appellant, G. H. Kelly, sued appellee, Dent Theaters, Inc., to recover damages for an alleged unwarranted and forcible ejection from a moving picture show in the city of Waco. Appellant's pleadings are sufficient to raise the issues made by the testimony introduced. Appellee pleaded a general denial.

Appellant testified that on Sunday, October 28, 1928, he purchased from appellee a ticket of admission to a moving picture show being exhibited and operated by it; that he tendered said ticket at the door and was admitted and conducted to a seat by an usher; that he occupied the end or aisle seat; that thereafter he rose three times to permit persons to pass him to inside seats and one time to permit a lady to pass out; that he was not a drinking man; that he had not taken a drink of intoxicating liquor that day and was perfectly sober; that he was not provoked nor offended at having to rise to let persons pass in and out; that something of that sort occurred every time he attended a show; that he rose to let said persons pass in and out in a gentlemanly way; that he did not speak to any one, either the people passing to and fro or any one else. He further testified that he had never been indicted or charged with any offense nor theretofore accused of using improper or insulting language in public or to any one. He further testified that when he had been in the room about 10 minutes, one Virgin, the manager of said theater, came up in a rude manner and hit him on the back and said: "You are wanted outside." "I said 'For what?' He says, 'Never mind, it makes no difference.' I says, 'Is there some one wanting to see me outside?' He said, 'No, it makes no difference, outside for you.'"

He further testified that in response to said request or command he went to the front; that as he rose and started said manager gave him a shove and followed behind him all the way out; that when he reached the front, just outside the exhibition room and between it and the sidewalk, he was confronted by a policeman summoned by said manager; that said manager said to the policeman: "Here's the man that was using abusive language and that was intoxicated in there." "Then I said, 'No.' I said, 'No, I am not the one. I am not intoxicated and haven't used no abusive language,' and the young lady (the usher) was standing there and she says, 'Yes, he is the one. He is the one that had his feet out in the aisle. I know him by his brown shoes.'"

He further testified that they stated to the policeman that the language used by him was "dammit it to hell, he was tired of getting up"; that they also charged that he replied "dammit" when the usher requested him to rise. He further testified that the policeman then asked him why he would go into a place like that intoxicated and use abusive language, or whether he was intoxicated and had used abusive language, and several questions to that effect; that something was said about the city hall; that the city jail is in the city hall; that the policeman said, "If you are drinking that way, there is where you ought to go;" that 35, 40, 50, or 75 people gathered there; that they filled the whole sidewalk in front of the building; that it was very embarrassing to him to be brought before a crowd like that and stood up in front of a policeman and questioned by him that way, when he knew he was not guilty of what he

was accused of; that he was both embarrassed and humiliated; that among the crowd attracted were one or two people who knew him and vouched for his good standing; that the manager said to him, "Well, we don't want you or any one like you to come into this show"; that when he was brought out and confronted with the policeman he did not feel free to go about his way or to go away from there, but felt that he was compelled to stay there with this policeman and said manager; that being a law-abiding citizen and not wanting "to make no break" or run, or anything like that, and not being used to being arrested, he just stayed there; that he considered himself under arrest for a period of 10 to 15 minutes, being the time he was ejected from the show until the policeman told him he might go.

When the examination of appellant was concluded the court peremptorily instructed a verdict for the defendant.

### Opinion.

Appellant assigns as error the action of the court in instructing the jury to return a verdict against him. Appellant in his pleadings alleged the facts attending his presence at the moving picture show, his forcible ejection therefrom, the charges made against him by appellant's manager to the policeman, the falsity thereof, and his embarrassment and humiliation on account of the whole transaction, substantially as testified by him; and prayed for the recovery of the amount paid by him for the ticket, and for damages.

The question of the right of one who has purchased a ticket to a place of public amusement to enter the same, or, having entered and been assigned a seat, to remain therein during the exhibition or performance so long as he conducts himself in a proper and lawful manner, has not, so far as we have been able to find, been determined by any of the courts of this state. The rules of law applicable in such cases are stated in 26 R. C. L. p. 704, as follows: "In this country, the great weight of authority is to the effect that the right of a purchaser of a ticket to enter and remain at a theater, circus, race track or private park, is a mere revocable license. The proprietor of an amusement enterprise may deny admission to anyone, and a person having entered may be forced to depart on request, and if he refuse to depart, he may be removed with such force as is necessary to overcome his resistance. No action will lie, in the absence of some statute regulating admission to places of amusement, for refusal to admit any person. If the license to enter be revoked by the proprietor and a ticket holder ejected without unnecessary force, the only remedy of the holder of the ticket is an action for breach of the contract, and his damages are limited to the price of the ticket and any expenses incident to the purchase of the ticket and attending the place of amusement."

Numerous cases are cited in support of the text. We have examined practically all the cases so cited, and find that they follow the early English case of Wood v. Leadbitter, 13 M. & W. 838 et seq., which is not accessible. We may also remark in this connection that several of the cases so cited involved racial discriminations. While the right of the proprietor of a place of public amusement to revoke the license evidenced by his ticket and require the holder thereof, who has been accepted and assigned a seat, to depart from such place, and to use the force necessary to compel him to do so, is asserted in several of the cases so cited, none of them involved the arbitrary and wholly unwarranted ejection of a ticket holding patron who had been duly received, accepted, and assigned a seat and was conducting himself in a proper and lawful manner, except Shubert v. Nixon Amusement Company, by the Supreme Court of New Jersey, 83 N. J. Law, 101, 83 A. 369, 371, in which the principal cases on the subject are reviewed and in which the court said: "It would be difficult, if not impracticable, to draw a line somewhere between the gate of the ticket taker and the end of the performance, on one side of which the proprietor could revoke his license, and on the other he could not, or to hold that the license was executed any more effectually after the licensee had taken his seat than when he passed into the theater."

On the contrary, in a later English case, Hurst v. Picture Theatres, Ltd. (1915) 1 K. B. 1 Ann. Cas. 1916D, 457 et seq., the Court of Appeal, in a lengthy and able opinion, held that the holder of a ticket of admission to a moving picture show who had entered, been accepted, and assigned an unreserved seat, was entitled to occupy the same and to remain throughout the entire performance, unless he afforded by his conduct reasonable ground for his ejection. We need not determine which of these conflicting rules should be adopted and applied in this state. According to appellant's testimony, which was the only testimony before the court, he was conducting himself in a polite, gentlemanly, and lawful manner. He was rudely ordered out of the room, and while he made no resistance whatever, but promptly complied with such command, he was struck and shoved and forcibly ejected, and falsely charged by the employés of appellant, before a policeman and a constantly increasing crowd of spectators, with drunkenness, disorderly conduct, and the use of offensive or profane language. Appellee owed to appellant as its licensee, so long as he conducted himself in an orderly and lawful manner, respectful, if not courteous, treatment. If such duty was breached by appellee, or its employés acting in the course of their employment, such breach was

actionable. Boswell v. Barnum & Bailey, 135 Tenn. 35, 185 S. W. 692, 693, L. R. A. 1916E, 912; Planchard v. Klaw & Erlanger New. Orleans Theatres Co., 166 La. 235, 117 So. 132, 133, 134, 60 A. L. R. 1086; Dickson v. Waldron, 135. Ind. 507, 34 N. E. 506, 35 N. E. 1, 24 L. R. A. 483, 488, 41 Am. St. Rep. 440 et seq.; Interstate Amusement Co. v. Martin, 8 Ala. App. 481, 62 So. 404, 405; Davis v. Tacoma Ry. & Power Co., 35 Wash. 203, 77 P. 209, 211, 66 L. R. A. 802'; Weber-Stair Co. v. Fisher (Ky.) 119 S. W. 195, 196; 26 R. C. L. pp. 718, 719. See also Weis v. Skinner (Tex. Civ. App.) 178 S. W. 34, 35.

Appellant sued for recovery of the amount paid for his ticket of admission and also for damages for the alleged tortious manner in which he was ejected. He had a right to prosecute both such alleged causes of action in one suit. Hooks v. Fitzenrieter, 76 Tex. 277, 279, 13 S. W. 230; H. & T. C. Ry. Co. v. Shirley, 54 Tex. 125, 148; American Automobile Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534, 535 (writ refused) and authorities there cited; Wolff v. Cohen (Tex. Civ. App.) 281 S. W. 646, 648, and authorities there cited; Wilson v. Place (Tex. Civ. App.) 293 S. W. 322, 323.

According to appellee's testimony above recited, his contract was breached and his right to civil and respectful treatment violated. If so, under the authorities above cited, he was entitled to recover for the breach of his contract the amount paid by him for his ticket of admission, and, for the tortious manner of his ejection, such compensatory damages as the jury might deem proper, regardless of whether his ticket of admission was revocable at the pleasure of appellee without cause at any time during the exhibition or not. The court erred in giving the peremptory instruction complained of by appellant.

The judgment is reversed, and the cause is remanded.