ACCEPTED
03-14-00397-CV
5567564
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/5/2015 3:02:35 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00397-CV**

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/5/2015 3:02:35 PM
JEFFREY D. KYLE
Clerk

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

_____

## American Multi-Cinema, Inc.,

Appellant/Cross-Appellee,

**v.**

## Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas,

Appellees/Cross-Appellants.

_____

On Appeal from the 200th Judicial District Court
Travis County, Texas

_____

# APPELLEES'/CROSS-APPELLANTS' MOTION FOR REHEARING AND FOR RECONSIDERATION EN BANC

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General
For Civil Litigation

ROBERT O'KEEFE
Division Chief
Financial Litigation, Tax, and
Charitable Trusts Division

CYNTHIA A. MORALES
Assistant Attorney General
State Bar No. 14417420

CHARLES K. ELDRED
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
512-475-1743
512-477-2348 (fax)
cynthia.morales@texasattorneygeneral.gov

COUNSEL FOR APPELLEES/CROSS-APPELLANTS

The Court's opinion made this case about much more than just the franchise tax implications of exhibiting movies. Rehearing or reconsideration en banc should be granted because the opinion's construction of the statutory terms "tangible personal property," "goods sold," and "sale," throws into doubt a half-century of established interpretation of Texas tax statutes, creates significant confusion in the application of both franchise and sales tax law, and threatens the loss of billions of dollars to the State.

## ARGUMENT

Since 1961, the Texas Legislature has established a strict and careful distinction between tangible personal property and services. This distinction has been established in both the franchise and sale tax statutes since the taxes were enacted. The Court's broad construction of the term "tangible personal property" to include any perceptible human experience, essentially extinguishes that distinction, potentially converting the sales of most services into sales of tangible personal property. The Court's construction of the terms "goods sold" and "sale" also departs significantly from traditional legal principles underlying the sales of goods, potentially affecting not only the interpretation of state tax laws, but that of any state law involving the sale of goods.

**I.** **THE COURT'S CONSTRUCTION OF THE TERM "TANGIBLE PERSONAL PROPERTY" AFFECTS BOTH THE FRANCHISE TAX AND THE SALES AND USE TAX.**

Because the term "tangible personal property" is also used in Tax Code Chapter 151 concerning the sales and use tax ("Chapter 151"), the construction of this term implicates not only the calculation of costs of goods sold under the franchise tax ("Chapter 171"), but also the scope and application of Chapter 151.

The use of identical language for the definition of "tangible personal property" in Chapters 151 and 171, signals a legislative intent that this term have a consistent meaning in state taxation. *See Hegar v. Ryan LLC*, No. 03-13-00400-CV, 2015 WL3393917, at *10 (Tex. App.—Austin April 30, 2015, no pet. h.). The relevant language in Chapter 171 was enacted in 2006 and provides:

> ["Tangible personal property" means] personal property that can be seen, weighed, measured, felt, or touched, or that is perceptible to the senses in any other manner[.]

TEX. TAX CODE §171.1012(a)(3)(A)(i). This language is identical to the first clause of the relevant language in Chapter 151:

> "Tangible personal property" means personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner . . . [.]

TEX. TAX CODE §151.009. That portion of the sales and use tax definition of tangible personal property is a long-standing one, existing in essentially the same form since

the adoption of the sales and use tax in 1961. *See* Act of August 8, 1961, 57th Leg., 1st C.S., ch. 24, art. I, §1, 1961 TEX. GEN. LAWS 71, 76.[1]

**II.    THE COURT'S OPINION EXPANDS THE DEFINITION OF "TANGIBLE PERSONAL PROPERTY" TO INCLUDE ANY PERCEPTIBLE EXPERIENCE, AND THE DEFINITION OF "SALE" TO NOT REQUIRE THE TRANSFER OF EITHER POSSESSION OF OR TITLE TO A GOOD, CONTRARY TO LEGISLATIVE INTENT AND TRADITIONAL LEGAL PRINCIPLES.**

**A.    The Provision Of Entertainment Is A "Service," Not The Sale Of "Tangible Personal Property."**

**1.    The sale of tangible personal property and the sale of services are treated distinctly under Section 171.1012, consistent with the sales tax treatment of such sales.**

Section 171.1012 clearly distinguishes between sellers of goods and sellers of services, allowing a business that sells tangible personal property to make a subtraction for costs of goods sold in calculating taxable margin, but not permitting a business that sells services to claim a subtraction for the costs of providing services. TEX. TAX CODE §§171.1012(a)(1), (a)(3)(A)(i), (a)(3)(B)(ii), (b). Services are explicitly excluded from the definition of tangible personal property under the franchise tax. TEX. TAX CODE §171.1012(a)(3)(B)(ii).

This distinction in the franchise tax is consistent with that found in the sales tax. From the time of the creation of the sales and use tax in 1961, the legislature has

---

[1] Art. 20.01(P): "Tangible personal property" means personal property which may be seen, weighed, measured, felt, or touched or which is in any other manner perceptible to the senses.

made a clear and strict distinction between tangible personal property and services. *See* Act of August 8, 1961, 57th Leg., 1st C.S., ch. 24, art. I, §1, 1961 TEX. GEN. LAWS 71, 76. (Art. 20.01(T); Art. 20.02). That distinction continues in the current separate identification of taxable personal property and taxable services in the definition of "taxable items," and in the restriction of the application of the sales tax to tangible personal property and only a limited number of specific services. *See* TEX. TAX CODE §§151.010, 151.0101(a)(1)-(17).

The determination of whether a sale is of a service or of tangible personal property is therefore fundamental to how the transaction and seller are treated under both the sales tax and franchise tax laws.

    **2.    At the time of the enactment of Section 171.1012, the Legislature was aware of existing sales tax statutes that define the provision of entertainment as a service, not the sale of tangible personal property.**

By 2006, it was well established that the provision of entertainment is a service, not the sale of tangible personal property; a movie ticket is merely a license for entry to an entertainment; and the sale of a movie ticket is the sale of an admission document to an amusement service. It was against this legal landscape that Section 171.1012 was enacted.

Since 1984, the provision of a sight, sound, or other sensible entertainment experience, has been classified as a taxable amusement service, notwithstanding the

already existing "seen . . . or that is perceptible to the senses in any other manner" language of Tax Code section 151.009 defining tangible personal property. *See* TEX. TAX CODE §§151.0101(a)(1) (listing taxable services; including amusement services); 151.0028(a) (defining amusement services, in relevant part, as "the provision of amusement, entertainment, or recreation");[2] 151.009 (defining taxable personal property). This classification of the provision of entertainment—which is undoubtedly perceptible to the senses—as a service, indicates both legislative intent and recognition that the provision of a perceptible experience is not a sale of "personal property that can be seen . . . or that is perceptible to the senses in any other manner." Had that not been the case, the legislature's enactment of statutes imposing sales and use taxes on services that provide any type of sensory experience would have been unnecessary.

This classification is also consistent with the traditional judicial treatment of the sale of an admission ticket as a mere license providing only a right of entry. *See Jordan v. Concho Theaters, Inc.*, 160 S.W.2d 275, 276 (Tex. Civ. App.—El Paso 1941, no writ); *Kelly v Dent Theater,* 21 S.W.2d 592, 593 (Tex. Civ. App.—Waco 1929, no writ); *see also Sells v. Six Flags over Texas*, No. Civ.A.3:96–CV–1574–D,

---

[2] Comptroller Rule 3.298(a)(1)(A), effective July 8, 1985, and adopted to administer Sections 151.0101(a)(1) and 151.0028, recognized motion pictures as amusements and movie theaters as places that offer amusement services. 34 TEX. ADMIN. CODE § 3.298(a)(1)(A)(iv), (viii); 10 TEX. REG. 2074–75, 2077 (1985).

1997 WL 527320, at *1 (N.D. Tex. Aug.14, 1997) (amusement park not strictly liable under DTPA because it provided entertainment service and did not sell product; park did not sell rides). Consistent with that legal principle, the sale of a movie ticket is considered a transfer of title to, or possession of, an admission document to an amusement service. TEX. TAX CODE §§151.005(3), 151.0028, 151.0101(a)(1).

It is presumed that the 2006 Legislature was aware of the existing law and acted in reference to it when enacting Section 171.1012. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990); *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 564–65 (Tex. App.—Tyler 2007, pet. denied) (legislature presumed to know prior state of the law, including prior interpretation of term, and to have intended that new law be subject to prior consistent definition). Nothing in Section 171.1012(a)(3)(A)(i) provides that "personal property that can be seen . . . or that is perceptible to the senses in any other manner" is to have a more expansive interpretation than the identical pre-existing language in Section 151.009.

Nor does any language in Section 171.1012(a) support extending the definition of tangible personal property to include any experience or action that can be seen, heard, felt, smelled, or tasted, regardless of whether it has historically been viewed as a service, and in direct contravention of sale tax statutes classifying

experiences or actions that can be perceived by the senses, as services. *See, e.g.*, TEX. TAX CODE §§151.0028 (amusement services); 151.0033 (cable television services); 151.0035 (data processing service); 151.0038 (information service); 151.00394 (internet access services); 151.0045 (personal services); 151.0047 (real property repair and remodeling); 151.0048 (real property services).

Chapter 171 itself describes as services the provision of experiences or actions that can be perceived by the senses, including telecommunication services, legal services, data processing services, accounting services, internet hosting services, transportation services, health care services, and emergency medical services. *See* TEX. TAX CODE §§171.002(c)(3), 171.1012(f), 171.106(g), 171.1011(v), 171.1011(p)(3), 171.083. The mere fact that something can be perceived by the senses does not *ipso facto* render it "tangible personal property," nor disqualify the provision of such sensible experience or action from being a "service."

### 3. AMC's provision of entertainment is the sale of a service, not the sale of tangible personal property.

The Court's opinion holds that the evidence was legally sufficient to support the trial court's finding that AMC produces tangible personal property, and concludes that AMC was therefore entitled to include its exhibition costs in its costs-of-goods-sold subtraction. *American Multi-Cinema, Inc. v. Hegar*, 03-14-00397-CV, 2015 WL 1967877, at \*6 (Tex. App.—Austin April 30, 2015, no pet. h.)

("opinion"). However, the opinion does not explicitly describe the tangible personal property produced by AMC and sold to the moviegoers, instead implying that it is either the: (1) film experience as perceived by the moviegoer ("the sights and sounds" of the film); (2) AMC's modified film reel consisting of the film, film trailer, advertisements, and light and curtain cues; or (3) the actual film itself. *Id.* at *5, *6, *9. The opinion rejects arguments that the movie exhibition was actually a sale of a service or a sale of a license (intangible property), citing to Section 171.1012(a)(3)(A)(ii), which provides that films are tangible personal property.[3]

While the film itself is undoubtedly tangible personal property, as is AMC's modified film reel, neither is sold to the moviegoer, as discussed *infra*, and so their production costs cannot be subtracted as costs of goods sold. *See discussion infra*.

---

[3] Section 171.1012(a)(3)(A)(ii) provides:

> ["Tangible personal property" means . . .] films, sound recordings, videotapes, live and prerecorded television and radio programs, books, and other similar property embodying words, ideas, concepts, images, or sound, without regard to the means or methods of distribution or the medium in which the property is embodied, for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered[.]

TEX. TAX CODE §171.1012(a)(3)(A)(ii). This provision seems to be in response to earlier arguments by theater companies—including AMC—to avoid paying a use tax by asserting that theaters were *not* acquiring tangible personal property, but rather only the incorporeal right to exhibit the film. *See American Multi-Cinema, Inc. v. City of Westminster*, 910 P.2d 64, 65 (Colorado App. 1995, cert. denied). These arguments have been uniformly rejected by various state appellate courts, *id*., including this Court. *Bullock v. ABC Interstate Theaters, Inc.*, 577 S.W.2d 337, 342 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.).

Moreover, Section 171.1012(a)(3)(A)(ii) does not convert the service of projecting film images onto a screen for a patron's entertainment into a sale of tangible personal property because: (1) services are not tangible personal property; (2) AMC never has ownership of the film;[4] and (3) it never transfers any ownership rights in the film to the moviegoer.[5] *See* TEX. TAX CODE §§151.0028; 151.0101(a)(1); 171.1012(a)(3)(A)(ii); *see also* §§171.1012(a)(3)(B)(i); 171.1012(i).

The Court's conclusion that a business produces tangible personal property by producing a "film experience" or the "sights and sounds" experienced by the moviegoer, effectively construes "tangible personal property" to include any sensory experience. Under this construction, the provision of any amusement that can be sensed—although explicitly classified as a taxable *service* under Section 151.0028—is a sale of "tangible personal property." If this construction stands, the provision for consideration of any sight, sound, touch, smell, or taste experience—such as professional sporting events, art exhibitions, and music concerts—presumptively becomes a sale of tangible personal property.

---

[4] AMC never owns the film it presents. DX4 at 2; DX5 at 6; DX6 at 6; DX7 at 2. Rather, it rents films from film distributors; when a film is no longer making money, AMC returns it. RR.82-83, 86-87, 121-22, 126-28, 166. Moreover, AMC has no copyright in the films and is not allowed to change the content of the films. RR.166; DX4 at 1; DX5 at 1; DX6 at 6; DX7 at 2.

[5] It is illegal for AMC's moviegoers to make copies of the films, and if caught doing so, the moviegoer will be arrested. RR.74. AMC's contracts with distributors provide that AMC will not allow customers to make copies of the films. DX4 at 2; DX5 at 6-7; DX6 at 6; DX7 at 2.

Further, because the definition of "tangible personal property" in Chapter 151 includes identical language to that construed by this Court, a provision of any services that can be perceived by the senses—*e.g.*, medical treatment, legal representation, architectural services—would all be presumptively taxable as the sale of tangible personal property, despite the legislature's express limitation of sales tax on services to seventeen specific categories.

Finally, the expansion of the definition of "tangible personal property" to include anything that can be perceived through the senses will effectively result in writing the exclusion for "services" out of Section 171.1012, and likely result in traditional service providers claiming "costs of goods sold" for the costs of providing services (e.g., examination rooms, legal offices, professional sports facilities), so long as their services are perceptible to the senses.

Such a construction of tangible personal property all but erases the distinction between the sale of tangible personal property and the sale of services—a distinction that the legislature has long maintained in the sale and use tax and carried over to the franchise tax. While the legislature may certainly choose to provide a narrow exception to the general rule,[6] the opinion's expansive construction of "tangible

---

[6] In 2013, the legislature granted movie theaters the ability to prospectively subtract movie exhibition costs as cost-of-goods-sold. *See* TEX. TAX CODE §171.1012(t).

personal property" will affect the application of the sales and franchise taxes far beyond the question of movie exhibitions, potentially cause billions of dollars of losses to the public fisc,[7] and obliterate the clear distinction between services and tangible personal property that has been a part of Texas tax law for over fifty years.

**B.      No "Sale" Of Tangible Personal Property Takes Place When A Moviegoer Purchases An Admission Ticket.**

In order for a business to have "costs of goods sold," *a priori*, it must sell goods. "Goods" are defined in Section 171.1012 as "real or tangible personal property sold in the ordinary course of business of a taxable entity." TEX. TAX CODE §171.1012(a)(1). While franchise tax statutes do not provide a definition of the word "sold" or "sale," the traditional legal definition of sale requires the transfer of property or title for a price, and so includes as an element, property that is "capable of being transferred." BLACK'S LAW DICTIONARY ("Sale") (10th edition, 2014). Thus an actual transfer of possession of, or title to, property which is capable of being transferred, is an inherent part of a sale of property.

This element of transfer of title or possession is also incorporated in the definition of "sale" in Section 151.005, which provides in relevant part that a sale of

---

[7] The Comptroller has estimated that the opinion's construction of the term "tangible personal property" could cost the State up to $6 billion from tax refunds and reduce the State's annual revenue by $1.5 billion. LETTER FROM GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS, TO HON. GREG ABBOTT, GOVERNOR, HON. DAN PATRICK, LIEUTENANT GOVERNOR, AND JOSEPH R. STRAUS, III, SPEAKER OF THE HOUSE, June 3, 2015, p.1.

tangible personal property is a "transfer of title or possession of tangible personal property" for consideration.[8] TEX. TAX CODE § 151.005(1). By contrast, the sale of a movie ticket is considered a transfer of title to or possession of a ticket for admission to a taxable amusement service. *Cf.* TEX. TAX CODE §151.005(1) to §151.005(3); *see also* §§151.0028, 151.0101(a)(1).

Yet, under the Court's opinion, the sale of an admission ticket to an entertainment—which is explicitly not a sale of tangible personal property under sales tax statutes—is the sale of tangible personal property. *Opinion* at *6. In holding that a theater has made a "sale" of "tangible personal property" by exhibiting a film, the Court has advanced a definition of a "sale" that contravenes both traditional legal principles and the definition of a sale in Section 151.005(1).

The opinion does not directly address the requirement that a transfer of title to or possession of tangible personal property is necessary for a sale, other than to note the lack of a "take-home" requirement in the definition of tangible personal property. *Opinion* at *5. However, a "sale" of tangible personal property requires that the buyer take physical or legal possession of the property so as to exercise the

---

[8]  Other subsections of Section 151.005 provide other methods of sale, but none would be applicable to the issues in this appeal.

rights of ownership, including the right of control, exclusive possession, disposal, and taking the property where the buyer choses.

A moviegoer's one-time experience of a movie's sights and sounds is a transitory perception created within the moviegoer as her eyes, ears, and mind process the sights and sounds presented. Neither title nor possession of such perception is ever owned by the theater nor could the theater transfer title or possession of such perception/experience to the moviegoer.

Nor does a theater transfer either title to or possession of: (1) of the actual film that it leases; (2) the modified film reel with trailers and advertisements displayed in the theater; or (3) the actual images or sounds as displayed in the theater. The moviegoer never receives possession of or title to any of these and enjoys no rights of ownership as to any film reel or film images or sounds.[9]

Instead, the only transfer of title or possession is to an admission ticket, which provides a license to enter the theater for a single viewing of a single film. Texas sales tax law recognizes this as a sale of services, not the sale of tangible personal property. TEX. TAX CODE §§151.005(3); 151.0028; 151.0101(a)(1). A movie theater

---

[9] *See* footnote 5, *supra*.

does not sell a "film" by selling tickets to a movie viewing any more than a museum sells works of art by selling tickets to an art exhibit.[10]

The opinion's decoupling of the "transfer of possession of or title to" requirement from a "sale of tangible personal property," would mean that any sort of presentation, activity, or exhibition, where consideration was provided, could constitute a sale of tangible personal property, even though no actual transfer of any property takes place. This expansion of the term "sale" of property to include situations where no actual possession of or title to any property is transferred would be a significant departure from traditional legal principles underlying the definition of "sale," potentially affecting not only sales and franchise tax law, but other areas of Texas law involving "sales."

**C.    Other States Have Rejected The Contention That A Movie Exhibition Is The Sale Of "Tangible Personal Property" To Moviegoers.**

Besides Texas, thirty-three states include the phrase "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses

---

[10] The language of Section 171.1012(a)(3)(A)(ii) "without regard to the means or method of distribution or the medium in which the property is embodied" does not alter this analysis. The medium in which the films are embodied are reels, which are not mass distributed to the moviegoers. Even considering, arguendo, the screen as the medium in which film images are embodied, *see Opinion* at *6, that would not make the images tangible personal property, because: images are not films; images are only temporarily present on the screen, not embodied in it; and because the screen is not intended to be, nor is it reasonably likely that it will be, mass distributed. *See* TEX. TAX CODE §§171.1012(a)(3)(A)(ii).

in any other manner," or one substantially similar to it, in their statutory definition of tangible personal property for sales and/or use tax purposes.[11] However, no other state appellate court has ever held that the exhibition of a movie is a sale of tangible personal property to moviegoers. Prior attempts by AMC and other movie theater companies to convince other state appellate courts to adopt such a position have been roundly rebuffed.

For example, the Vermont Supreme Court rejected an argument that a theater was not subject to use tax because it was merely renting films for resale to moviegoers. *In re Merrill Theatre Corporation Sales and Use Tax*, 138 Vt. 397, 400 (Vt. 1980). In its analysis, the court held that the "tangible personal property" was the film itself, not the image produced by it, and that the moviegoer, while possibly being "'sold' or 'leased' some right to view and enjoy the product of the film's projection," acquired "no right whatever to the tangible property itself." *Id.*

---

[11] ARIZ. REV. STAT. §40-5001(17); ARK. CODE §26-53-102(16A); CAL. REV. & TAX CODE §6016; CONN GEN. STAT. §12-407(13); FL. STAT. §212.02(19); GA. CODE §48-8-2(37); ID. CODE §63-3616(a); IND. CODE §6-2.5-1-27; IOWA CODE §423.1(59); KAN. STAT. §79-3602(pp); KY. REV. STAT. §139.010(33); LA. REV. STAT. §47:301(16)(a); ME. REV. STAT. §1752(17); MI. COMP. LAWS §205.92(k); MINN. STAT. §297A.61(Subd.10(a)); NEB. REV. STAT. §77-2701.39; NEV. REV. STAT. §372.085; N.J. STAT. §54:32B-2(g); N.C. GEN. STAT. §105-164.3(46); N.D. CENT. CODE §57-39.2-01(25); OHIO REV. CODE §5739.01(YY); 68 OK. STAT. §1352(YY); R.I. GEN. LAWS §44-18-16; S.C. CODE §12-36-60; S.D. CODIFIED LAWS §10-45-1(14); TENN. CODE §67-6-102(89)(A); UTAH CODE §59-12-102(123)(a)(i-ii); 32 VT. STAT. §9701(7); VA. CODE §58.1-602; REV. CODE WASH. §82.08.010(7); W.VA. CODE §11-15B-2(60); WIS. STAT. §77.51(20); WY. STAT. §39-15-101(ix).

The court also noted that: "No transfer occurs to the patron in any reasonably acceptable sense. He takes nothing into the theatre, neither does he take anything out." It rejected the contention that any "resale" of the film to the moviegoer took place, holding that

> Under the tortured logic which the taxpayer would have us apply here, the light bulbs, the seats, and the projectors would be "used" by the patrons, with the use constituting a "resale" and exempting their original purchase from tax. Recoupment of cost undoubtedly enters into the price paid by every consumer, including overhead expense. But recoupment is not equivalent to resale.

*Id*. The court further rejected the argument that the film was part of a product created by the theater and "consumed" by the moviegoer, stating

> As we have already ruled, the product of the projection, whatever it may be, is not "tangible personal property." The film itself does not become an ingredient or component part of the product; it remains unchanged and unaffected. It is not consumed or destroyed; it does not lose its identity.

*Id.* at 401.

AMC attempted to assert that a film exhibition is a resale of the film to the moviegoers in Colorado. *See American Multi-Cinema, Inc. v. City of Westminster*, 910 P.2d 64, 66 (Colorado App. 1995, cert. denied). The court rejected AMC's argument, noting that moviegoers were not given, nor did they seek, possession of the film. *Id*. at 67. Rather, they paid a fee in order "to be able to view images from the film as they are projected onto the screen." *Id.* The court concluded that "the

charge made by plaintiff for the privilege of viewing such images does not constitute a re-sale of the film; it is [AMC], not its customers, who is the ultimate 'user' of such tangible personal property." *Id.* at 67.

More recently, the same court re-affirmed *City of Westminster*, noting that the "'conversion' to a 'useable medium' that may occur when a film's images are projected onto a movie screen is merely the right to use the product as it was intended, that is, to exhibit the film by projecting it onto a movie screen," and holding that "[m]ovie viewers are no more consumers of film reels than they are of seats, screens, or projectors used in movie theaters." *Cinemark USA, Inc. v. Seest*, 190 P.3d 793, 797, 799 (Colorado App. 2008).

## III. CONCLUSION

The expansion of the term "tangible personal property" to include any sensory experience effectively dismantles the legislature's deliberate separation between services and tangible personal property first established in Texas tax law over fifty years ago. It further potentially renders a nullity not only the exception for services in Section 171.1012(a)(3)(B)(ii), but also a host of sales tax statutes distinguishing taxable personal property from services, and enumerating and describing taxable services. *See* TEX. TAX CODE §§151.010, 151.0101(a)(1)-(17), 151.0028–.0048. Such a broad construction would create widespread uncertainty regarding the

application of both the sales tax and franchise tax, cause major difficulties in the administration of taxes and the calculation of revenue estimates, and potentially result in a massive loss of revenue to the State.

This Court should issue a new opinion to harmonize its construction of the terms "tangible personal property," "goods sold", and "sale" with the general legislative intent expressed in Chapters 151 and 171 and traditional legal principles. This Court should also hold that AMC provides an amusement service, accessed through the sale of a license embodied in a ticket; its provision of movie images and sounds for a one-time experience is not the sale of tangible personal property; and it may not deduct its movie exhibition costs at issue as costs of goods sold. *See* TEX. TAX CODE §§151.0028; 151.005(3); 171.1012(a)(1), (a)(3)(B)(ii).

## PRAYER

The Court should grant this motion for rehearing and motion for reconsideration en banc.

Respectfully submitted,

KEN PAXTON
Attorney General

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Division Chief
Financial Litigation, Tax, and
Charitable Trusts Division

/s/ *Cynthia Morales*
CYNTHIA A. MORALES
Attorney in Charge
State Bar No. 14417420

CHARLES K. ELDRED
State Bar No. 00793681

Financial Litigation, Tax, and
Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
512-475-1743
512-477-2348 (fax)
cynthia.morales@texasattorneygeneral.gov
charles.eldred@texasattorneygeneral.gov

ATTORNEYS FOR APPELLEES/CROSS-APPELLANTS,
GLENN HEGAR AND KEN PAXTON

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this motion contains 4418 words, excluding the portions of the motion exempted by Rule 9.4(i)(1), according to Word 2013.

/s/ *Cynthia Morales*
Cynthia A. Morales
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that a copy of this *Appellees'/Cross-Appellants' Motion for Rehearing* was served on opposing counsel, Doug Sigel, doug.sigel@ryanlawllp.com, on June 5, 2015, via File & ServeXpress.

/s/ *Cynthia Morales*
Cynthia A. Morales
Assistant Attorney General